IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| HENSON PATRIOT LIMITED COMPANY, LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> ANDREW MEDINA, CLARA CALDERAS MEDINA, CALDERAS CUSTOM PRINTING, LLC, AND MARCEL MASUKAWA <br><br> *Defendants.* | § § § § § § § § § § § § § § § § <br><br> Civil Action No.   SA-14-CV-534-XR |

## ORDER

On this day the Court considered Plaintiff's Motion for Preliminary Injunction (docket no. 26). For the following reasons the preliminary injunction is GRANTED in part and DENIED in part.

### I.   BACKGROUND

**A. Factual Background**

Henson Patriot Limited Company ("Plaintiff") purchased a specialty printer, America Color Labs (ACL), in December 2010. Defendant Andrew Medina was a partner at ACL and signatory to the purchase agreement. Defendants Andrew Medina and Marcel Masukawa were employees at ACL and continued working there after Plaintiff purchased ACL. Defendant Clara Calderas Medina, Andrew Medina's wife and former low-level employee at ACL, formed Texas corporation Calderas Custom Printing LLC on April 4, 2012. Calderas Custom Printing is the general partner in South Texas Digital, LP (STD). Clara Medina and Masukawa are partners in defendants Calderas Custom Printing and STD.

Plaintiff completed and memorialized its ACL stock purchase in a purchase agreement ("Purchase Agreement") negotiated between Daren Henson, partner at Plaintiff, and Cordell Gardner, majority partner at ACL prior to the purchase. Purchase Agreement ¶¶ 1-4 provide for a five-year non-compete in Bexar County and its contiguous counties for all sellers (Exhibit 1); of whom only Andrew Medina is relevant to this case. Clara Medina and Masukawa were not signatories to the Purchase Agreement. Purchase Agreement ¶ 5 sets forth an agreement between Plaintiff and sellers that a breach of the non-compete would be irreparable harm and an injunction is a proper remedy for breach.

After selling his stake in ACL to Plaintiff, Andrew Medina continued to work at the company first as a production manager, then in the sales department. While in sales, Andrew Medina had three accounts, Susan Komen Foundation, Color Concepts, and Alamo Group. Eventually, in June 2012, Andrew Medina left ACL to work as a salesman at Fellers, Inc., a printer-supply company. Clara Medina was formerly a low-level employee at ACL prior to Plaintiff's purchase of ACL. Masukawa worked in production at ACL for over ten years before departing April 16, 2012 to work at STD.

In early 2013, Plaintiff found Andrew Medina's old work phone that was never deactivated. On it, Plaintiff discovered several messages creating suspicion that Andrew Medina was aiding and advising STD in the launch and conduct of its business. Carla Aden, in her capacity as a Color Concepts representative, left voice messages for Andrew Medina referring to "opportunities" for STD. Aden copied Andrew Medina on emails that also carbon copied "orders@stxdigital.com." Andrew Medina discussed financing STD with his brother-in-law, Jose Elizondo. And on multiple occasions Clara Medina urged Andrew Medina to talk about STD when he was out of his office at ACL. Lastly, Andrew Medina appears to have discussed

retrieving specific work product from ACL for STD's use with his daughter. Andrew Medina has also visited STD's storefront on multiple occasions, and all three of Andrew Medina's accounts at ACL, Susan Komen, Color Concepts, and Alamo Group, have used STD's services since the company formed, largely abandoning ACL.

### B. Procedural History

Plaintiff filed the Complaint on June 12, 2014. Plaintiff then moved for a preliminary injunction on July 28, 2014. The Court held an evidentiary hearing on the preliminary injunction on September 4, 2014, where Daren Henson and Andrew Medina gave live testimony. The Court gave an oral order granting the preliminary injunction as to Andrew Medina, and denying as to the other defendants. This written order further explains the oral order.

## II. JURISDICTION

This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 because Plaintiff raises a federal question by asserting a 15 U.S.C. § 1125(a) violation in the Complaint. This court has personal jurisdiction over the Defendants because they are residents or citizens of Texas.

## III. ANALYSIS

The grant of injunctive relief is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance. *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 288 (5th Cir. 2012); *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). A preliminary injunction should not be granted unless the movant demonstrates by a clear showing: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not

undermine the public interest. *Lindsay v. City of San Antonio*, 821 F.2d 1103, 1107 (5th Cir. 1987); *Valley*, 118 F.3d at 1051. At the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence. *Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993).

**A. Substantial Likelihood of Success on the Merits**

To determine the likelihood of success on the merits, the Fifth Circuit looks to the standards provided by the substantive law. *Valley*, 118 F.3d at 1051; *see Miss. Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 622 (5th Cir. 1985). Therefore, to succeed on its motion for preliminary injunction, Plaintiff must show there was a valid non-compete, the non-compete applied to each defendant, and each defendant violated the non-compete.

**1. Validity of the Contractual Non-Compete**

"A covenant not to compete is enforceable . . . to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." TEX. BUS. & COM. CODE § 15.50; *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 777 (Tex. 2011); *see Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644 (Tex. 2006) (foreshadowing the focus on reasonability and the time, geography, and scope aspects in *Marsh*, while ignoring the "ancillary to" inquiry). The statute thus imposes a reasonableness test where time, geography, and scope of activity are the main factors. *Oliver v. Rogers*, 976 S.W.2d 792, 800 (Tex. App.—Houston 1st Dist. 1998). The three are factors, not elements. Indefinite time or unlimited geographic scope are not automatic bars. *Oliver*, 976 S.W.2d at 800. Texas courts have upheld five-year non-competes when the non-compete was necessary to protect the

purchaser's goodwill, and the covenant was not oppressive to the promisor. *See Chandler v. Mastercraft Dental Corp. of Texas Inc.*, 739 S.W.2d 460, 464 (Tex. App.—Ft. Worth 1987, writ denied); *Oliver*, 976 S.W.2d at 800 (5-year non-compete upheld). Texas courts have upheld four-year non-competes that cover five entire states. *Vaughn v. Intrepid Directional Drilling Specialists, Ltd.*, 288 S.W.3d 931, 938 (Tex. App.—Eastland 2009).

Plaintiff argues the non-compete is valid as applied to Andrew Medina because it is a reasonable restraint on trade. Here, the non-compete lasts five years. It encompasses Bexar County and all contiguous counties, and only includes activities related to specialty printing and other services provided by ACL. In addition, ACL's goodwill and other business interests are protected by the non-compete because it only covers this specific printing industry, protects contracts and relationships with existing clients, and the asserted violation of the non-compete coincides with loss of business to STD. Plaintiff also argues that, in the context of a purchase agreement, the non-compete should more likely be upheld because it was bargained for with valuable consideration, as opposed to an employee contract. Texas courts are more amenable to long non-competes in the purchase agreement context than the employer-employee context. *See, e.g.*, *Heritage Operating, LP v. Rhine Brothers, LLC*, 2012 WL 2344864 (Tex. App.—Ft. Worth 2012, no pet.). The non-compete here is a reasonable restraint on trade because in the course of the sale of a business, a five-year non-compete limited to the small industry and a relatively small geographic scope is reasonable.

**2. Applicability of the Contractual Non-Compete to Non-Signatories**

In the context of the sale of a business, Texas courts extend a non-compete to a non-signatory in two scenarios: (1) an entity is created by a signatory for the purpose of competing to circumvent, or perpetuate a "fraud" on, the non-compete, *see Texas Shop Towel, Inc. v. Haire*,

246 S.W.2d 482, 484 (Tex. Civ. App.—San Antonio 1952, no writ), or (2) a signatory significantly aids, abets, consults, or advise another entity or person's competition with the buyer when the non-compete forbids aiding, abetting, consulting or advising. *See Barrett v. Curtis*, 407 S.W.2d 359, 362 (Tex. Civ. App.—Dallas 1966, no writ); *see Pitts v. Ashcraft*, 586 S.W.2d 685, 692 (Tex. Civ. App.—Corpus Christi 1979) ("[T]he covenantor must also undertake a more active participation in the competing enterprise, such as giving the competitor the benefit of his experience, knowledge, and/or influence to assist the competitor in the conduct of his competing business;" mere financial assistance is not enough.).[1]

Here, Andrew Medina's non-compete clearly forbids aiding, abetting, consulting, or advising in competition with Plaintiff.[2] Therefore, Texas law would allow an extension of Andrew Medina's non-compete to entities or persons he significantly aided, abetted, consulted, or advised to compete with Plaintiff in some circumstances.

Given the evidence currently available, however, the Court cannot say Plaintiff clearly met its burden to demonstrate Andrew Medina significantly aided, abetted, consulted or advised the other defendants' competition with Plaintiff. The facts are approaching enough to show Andrew Medina significantly aided, abetted, and consulted with the other Defendants. Andrew Medina: 1) was aware of his wife's formation of STD prior to his departure from ACL but did not tell ACL or anyone affiliated with ACL, 2) visited STD's storefront on several occasions, 3) communicated with former clients at ACL after leaving his duties at ACL, 4) received communications from STD customers regarding orders from STD, and 5) generally acted in a

---

[1] The existence of a familial relationship does not greatly impact Texas courts' analysis of applying non-competes to non-signatories, as they have ruled in both directions with close family members. *Compare Barrett v. Curtis*, 407 S.W.2d at 363 (holding a defendant's brother's new business enjoined) *with Owen v. Willis*, 20 S.W.2d 338 (Tex. Civ. App.--Amarillo 1929, writ dism'd w.o.j) (holding a defendant's brother's business free to continue competing, even with the defendant's wife as an employee).

[2] Andrew Medina "shall not either directly or indirectly, either as employee, employer, consultant, advisor . . . engage, consultant with, advise or otherwise participate in any business that s in competition" with ACL. Purchase Agreement ¶ 1.

suspicious manner when dealing with people affiliated with STD during and after employment at ACL, including acknowledging his daughter taking work-product from ACL to give to STD.

Yet, Plaintiff has not shown enough for the Court to conclude Andrew Medina *significantly* aided, consulted, or advised the other defendants. Defendants maintained at the evidentiary hearing Andrew Medina plays no role in STD's business; and any apparent business communication with him included was accidental. They insist his visits to the STD storefront were either personal or in his capacity as a salesman for Fellers. While the Court is not convinced Andrew Medina did not aid, consult, or advise STD, the Court exercises caution at this time due to the extraordinary nature of a preliminary injunction. The Court cannot find that Plaintiff has met its burden of demonstrating that Andrew Medina significantly aided, abetted, consulted, or advised the other Defendants in their competition with Plaintiff given the available evidence. Therefore, the Court does not find that the non-compete should be extended to defendants Clara Medina, Marcel Masukawa, STD, and Calderas Custom Printing. The preliminary injunction as to those defendants is denied because Plaintiff, at this time, has failed to establish a substantial likelihood of success on the merits.

**B. Irreparable Harm**

A plaintiff must be threatened with irreparable injury for a court to issue a preliminary injunction. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 392 (1981). To show a threat of irreparable injury, a plaintiff must demonstrate that "a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986). In Texas, injury resulting from the breach of a non-compete "is the epitome of irreparable injury, so enforcement appears to be the rule rather than the exception." *Travelhost, Inc. v. Brady*, 3:11-CV-454-M-BK,

2012 WL 555191 (N.D. Tex. Feb. 1, 2012) report and recommendation adopted as modified, 3:11-CV-454-M-BK, 2012 WL 556036 (N.D. Tex. Feb. 17, 2012). "Proof that a highly trained employee is continuing to breach a non-competition covenant gives rise to a rebuttable presumption that the applicant is suffering irreparable injury." *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 236 (Tex. App.—Houston 14th Dist. 2003, no pet.).

Texas Courts have held incalculable damages, *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 602 (Tex. App.—Amarillo 1995, no writ), and immeasurable loss off goodwill, *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 24 (Tex. App.—Houston 1st Dist. 1998, pet. denied), are irreparable harms for which an injunction can issue. Though a contractual provision declaring irreparable harm is evidence of irreparable harm, a provision alone is insufficient for a court to definitively conclude irreparable harm. *See, e.g., Smith, Bucklin & Assocs., Inc. v. Sonntag*, 83 F.3d 476, 481 (D.C. Cir. 1996) ("Although there is a contractual provision that states that the company has suffered irreparable harm if the employee breaches the covenant and that the employee agrees to be preliminarily enjoined, this by itself is an insufficient prop.").

Plaintiff argues it would suffer incalculable damages and the loss of goodwill from a violation of the non-compete. The Purchase Agreement's language presumes a violation of a non-compete is "irreparable harm." Plaintiff has specifically lost three contracts or projects of varying sizes, but the extent of the lost business is unknown for the past and future. Additionally, Plaintiff cannot know the extent of the loss of goodwill it has suffered from the non-compete violation.

Plaintiff's complained of harm is the "epitome" of irreparable. Defendant cannot overcome the rebuttable presumption that Plaintiff is suffering irreparable injury due to Andrew

Medina's status as a highly trained employee who is continuing to violate his non-compete. Plus, the contractual language is good evidence to support irreparable harm, and the damage suffered from lost clients is largely incalculable, especially when lost goodwill is considered. Plaintiff is threatened with irreparable harm.

**C.  Balancing the Hardships**

"The third factor requires the plaintiff to establish that his irreparable harm is greater than the hardship that the preliminary injunction would cause the defendant." *DS Waters of Am., Inc. v. Princess Abita Water, L.L.C.*, 539 F. Supp. 2d 853, 863 (E.D. La. 2008) (citing *Valley*, 118 F.3d at 1051).  Courts engage in a traditional balancing test on this factor. *See, e.g.*, *Am. Exp. Fin. Advisors, Inc. v. Scott*, 955 F. Supp. 688, 693 (N.D. Tex. 1996) (holding the hardships to a signatory to a non-compete from the preliminary injunction do not outweigh those to the company if the signatory were allowed to violate his non-compete and work with former clients for the period covered in the agreement); *Baker Hughes Inc. v. Nalco Co.*, 676 F. Supp. 2d 547, 556 (S.D. Tex. 2009), *aff'd*, 374 F. App'x 979 (Fed. Cir. 2010) (holding a patent holder's hardships outweigh those of a non-holder competitor that has not yet entered the market).

Plaintiff argues 1) it paid fair value for Andrew Medina's non-compete and would suffer hardship to have it circumvented; and 2) Texas courts consistently hold the harm to the company outweighs the harm to the non-compete signatory.  The loss of business and goodwill is also significant for Plaintiff's side of the balancing.  The reasonableness of the restriction on Andrew Medina's activity works against him; Andrew Medina could engage in any other business of his choice, and indeed has by working at Fellers, or even print solutions outside Bexar County and the contiguous counties.

Defendants argue they would lose their whole business if the injunction issued against all Defendants.  STD is the only source of income for the Medinas and Masukawa.  STD may continue doing business without Andrew Medina's aid or advice.  Presumably that will not cause STD to stop operating or making money considering Defendants maintain Andrew Medina has not aided or advised STD to this point.  Therefore there is no harm to the other defendants to consider in the balancing.

The harm caused by the violation of a non-compete outweighs the harm to Andrew Medina and all other Defendants.  Plaintiff paid a substantial sum to acquire ACL and the non-competes like Andrew Medina signed.  The restriction on Andrew Medina's conduct is reasonable.  The harm caused by the violation of the reasonable and bargained for non-compete far outweighs the harm of enforcing it here.

### D.  The Injunction will not Undermine the Public Interest

Non-compete clauses are disfavored as a restraint on business in Texas. Still, the Fifth Circuit and courts in Texas uphold them and grant injunctions enforcing them in some circumstances. Upholding reasonable non-competes is within the public interest. *See, e.g.*, *TransPerfect Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 758 (S.D. Tex.  2009).

Defendants argue that their business is threatened, and restricting others' right to choose their service provider undermines public interest.  They also argue a threat to another business.  None of these are compelling or unique to this particular non-compete.  Courts continuously grant injunctions in the face of these exact "public interest" concerns.

The Court finds that a preliminary injunction in this case would not undermine the public interest.  The fourth prong is satisfied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is GRANTED in part and DENIED in part. The Court finds that Plaintiff has satisfied each of the prerequisites for obtaining a preliminary injunction against Andrew Medina, but at this time fails to show a substantial likelihood of success on the merits against Clara Medina, Marcel Masukawa, South Texas Digital, and Calderas Custom Printing. It is hereby ORDERED that:

1. Andrew Medina shall be immediately preliminarily enjoined and restrained during the pendency of this action, and up to five years from the closing date from:

    a. directly or indirectly, either as employee, employer, consultant, advisor, agent, principal, partner, stockholder, corporate officer, director, or in any individual or representative capacity, engaging, consulting with, advising or otherwise participating in any business that is in competition in any manner whatsoever with ACL within Bexar County, Texas, and the counties contiguous to Bexar County.

    b. either directly or indirectly, either as employee, employer, consultant, advisor, agent, principal, partner, stockholder, corporate officer, director, or in any individual or representative capacity, soliciting any employee of Plaintiff, or any employee of ACL retained by Plaintiff after December 31, 2010, to leave employment with Plaintiff.

    c. soliciting or approaching, or causing to be solicited or approached, with regard to any services or products provided by the Plaintiff as of the Closing Date, any person who was a customer or client of ACL.

2. It is further ordered that Plaintiff shall maintain the bond previously posted in the amount of $500.00 for this Order.

It is so ORDERED.

SIGNED this 11th day of September, 2014.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE